IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| MARNE SIMPSON, | ) | |
| | ) | |
| Brings this action on behalf | ) | |
| Of the United States of America | ) | |
| | ) | |
| c/o A. Bryan Albritton | ) | CIVIL ACTION NO. 8:10-cv-1580-T17-TGW |
| United States Attorney | ) | |
| Middle District of Florida | ) | **FIRST AMENDED COMPLAINT** |
| | ) | |
| | ) | |
| And | ) | |
| | ) | |
| c/o | ) | |
| Attorney General of the United | ) | |
| States Department of Justice | ) | |
| | ) | |
| Relator, | ) | |
| | ) | |
| Vs. | ) | |
| | ) | |
| HCA, INC., | ) | |
| HCA WEST FLORIDA, | ) | |
| AN HCA AFFILIATE, BLAKE | ) | |
| MEDICAL CENTER, BRANDON | ) | |
| REGIONAL HOSPITAL, | ) | |
| CENTRAL FLORIDA REGIONAL | ) | |
| HOSPITAL, COMMUNITY | ) | |
| HOSPITAL, DOCTORS | ) | |
| HOSPITAL OF SARASOTA, | ) | |
| EDWARD WHITE HOSPITAL, | ) | |
| ENGLEWOOD COMMUNITY | ) | |
| HOSPITAL, FAWCETT | ) | |
| MEMORIAL HOSPITAL, | ) | |
| LARGO MEDICAL CENTER, | ) | |
| LARGO MEDICAL CENTER – | ) | |
| INDIAN ROCKS, NORTHSIDE | ) | |
| HOSPITAL & HEART INSTITUTE, | ) | |

1

| | |
|---|---|
| OAK HILL HOSPITAL, OSCEOLA REGIONAL HOSPITAL, REGIONAL MEDICAL CENTER OF BAYONET POINT, SOUTH BAY HOSPITAL, ST. PETERSBURG GENERAL HOSPITAL | ) ) ) ) ) ) ) |
| Defendants. | ) ) |

# FIRST AMENDED COMPLAINT

1.   Pursuant to Rule 15(a) of Federal Rules of Civil Procedure, *qui tam* Relator, **MARNE SIMPSON**, in the name of the United States Government, files this First Amended Complaint action to recover penalties and damages arising from the Defendants, **HCA, INC.'s** (Hospital Corporation of America)**, HCA WEST FLORIDA - AN HCA AFFILIATE, BLAKE MEDICAL CENTER, BRANDON REGIONAL HOSPITAL, CENTRAL FLORIDA REGIONAL HOSPITAL, COMMUNITY HOSPITAL, DOCTORS HOSPITAL OF SARASOTA, EDWARD WHITE HOSPITAL, ENGLEWOOD COMMUNITY HOSPITAL, FAWCETT MEMORIAL HOSPITAL, LARGO MEDICAL CENTER, LARGO MEDICAL CENTER – INDIAN ROCKS, NORTHSIDE HOSPITAL & HEART INSTITUTE, OAK HILL HOSPITAL, OSCEOLA REGIONAL HOSPITAL, REGIONAL MEDICAL CENTER OF BAYONET POINT, SOUTH BAY HOSPITAL, and ST. PETERSBURG GENERAL HOSPITAL's** (hereinafter **HCA)** unlawful and fraudulent practices and wrongful termination of Relator, **MARNE SIMPSON**, as detailed herein.  These unlawful and fraudulent practices have economically harmed the United States Government and are prohibited under the federal **False Claims Act**.

## PARTIES

2.     Relator, **MARNE SIMPSON** ("**Relator**" or "**Simpson**"), is a permanent resident and citizen of the United States of America.  **Relator** brings this civil action for violation of 31 U.S.C. § 3729(a)(7) for herself and for the United States Government pursuant to 31 U.S.C. § 3730(b)(1).

3.     Defendant, **HCA, INC.**, is a Foreign Corporation with its principal place of business in Nashville, Tennessee.  Defendant, **HCA WEST FLORIDA**, an affiliate of **HCA, INC.**, is a comprehensive network of hospitals, outpatient surgery and diagnostic imaging facilities and a complete continuum of specialized health programs and services that meet the healthcare needs of residents and businesses in West and Central Florida communities.  **HCA West Florida** affiliated facilities include:  **BLAKE MEDICAL CENTER, BRANDON REGIONAL HOSPITAL, CENTRAL FLORIDA REGIONAL HOSPITAL, COMMUNITY HOSPITAL, DOCTORS HOSPITAL OF SARASOTA, EDWARD WHITE HOSPITAL, ENGLEWOOD COMMUNITY HOSPITAL, FAWCETT MEMORIAL HOSPITAL, LARGO MEDICAL CENTER, LARGO MEDICAL CENTER – INDIAN ROCKS, NORTHSIDE HOSPITAL & HEART INSTITUTE, OAK HILL HOSPITAL, OSCEOLA REGIONAL HOSPITAL, REGIONAL  MEDICAL CENTER OF BAYONET POINT, SOUTH BAY HOSPITAL, and ST. PETERSBURG GENERAL HOSPITAL** ("**SPGH**").

## JURISDICTION AND VENUE

4.     This action arises under the False Claims Act, 31 U.S.C. § 3729 *et seq*.

5.     Jurisdiction over this action is conferred on this court by 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331 in that this action arises under the laws of the United States.

6.     Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b) and (c) and 31 U.S.C. § 3732(a) because the

3

Defendant, **HCA**, transacts business in this District and the facts forming the basis for the Complaint occurred in this District.

## PRELIMINARY STATEMENT

7.     Relator, **MARNE SIMPSON**, was an employee of **ST. PETERSBURG GENERAL HOSPITAL**, and most recently held the position of Registered Nurse, Department Director of Case Management.  Relator was employed with **ST. PETERSBURG GENERAL HOSPITAL** from approximately July 15, 1985 until her termination on May 14, 2010.

8.     Defendant, **HCA**, provides healthcare services nationwide.

9.     On or about July 15, 1985, Relator, **MARNE SIMPSON**, began her employment with the Defendant, **ST. PETERSBURG GENERAL HOSPITAL**.  At the time of her termination from employment, Relator, **MARNE SIMPSON**, held the position of Registered Nurse, Department Director of Case Management and throughout her employment, Relator performed her duties in an exemplary fashion.

10.    Under **Relator's** direction, the department continued to use the McKesson InterQual criteria for screening new admissions and for the continued stay of hospitalized patients.  McKesson InterQual products help healthcare organizations facilitate quality of care and clinical resource utilization by providing objective criteria based on well-researched scientific knowledge and real world clinical experience to assess the appropriate care for individual patients.  Treatments or services that are only given once in the Emergency Room cannot be used to meet intensity of service for admission.

11.    Further, according to the InterQual website: "Refined and proven over 30 years to provide exceptional credibility and integrity in all InterQual® products, the InterQual development cycle combines systematic, critical assessment of the medical literature by our highly trained clinical development team - including more than 60 physicians, registered nurses and allied health

professionals - with feedback from our InterQual Clinical Panel of over 650 experts" (http://www.mckesson.com/payers/decision-management/interqual-evidence-based-clinical-content/interqual-evidence-based-development/).

12.     Beginning around 2007 at **SPGH**, **Relator** began to see a change in not only the quality of care being delivered, but the Physicians on staff were not of the same level of standards that she had seen in previous years. It appeared most of the reputable Physicians had departed, and the top admitting Physicians seemed to have alternative motives for keeping patients in the hospital longer. The highest percent of admissions at the hospital come through the emergency room; they are not direct admissions.

13.     Approximately in 2007, **HCA** chose several hospitals, along with **SPGH**, to participate in a study called EHR. **HCA** brought in a group of physicians who reviewed medical records and identified patients that could have been inpatients instead of being placed in observation services. This group did not utilize the InterQual criteria only, but insisted if Centers for Medicare and Medicaid Services (CMS) guidelines were used and appropriate documentation done by Physicians regarding comorbidities of patients, etc.; the rate of inpatient admissions could be much higher.

14.     **Relator's** department was instructed to educate all Physicians on this EHR study and direct them to use CMS guidelines to make patients specifically inpatients, instead of using strictly InterQual criteria. The two charts FMQAI requested in 2010 to review were along these lines. (Florida's Medicare Quality Improvement Organization performs independent medical record reviews for a variety of settings. FMQAI provides technical assistance to hospitals to help them comply with Medicare billing and coding regulations. FMQAI is a subsidiary of Health Services Holdings (HSH) and is funded through federal, state and private contracts.) FMQAI denied both patients as inpatients regardless of the documentation done by Physicians and the comorbidities of the patients. FMQAI used the InterQual criteria only.

5

15. In approximately 2008, **Relator** discovered the fraudulent activities by **ST. PETERSBURG GENERAL HOSPITAL** involved the admission of patients who in no way met the medical necessity requirements for hospitalization. This was perpetuated by Chief Executive Officer, Robert (Bob) Conroy, at a meeting with **SPGH** Directors that "the key to success of the hospital was all about volume."

16. Defendant, **ST. PETERSBURG GENERAL HOSPITAL**, was instructing its Emergency Room Physicians that if they did not admit patients from the Emergency Room to the hospital, they would be terminated. This was perpetuated in 2010 by the Medical Director of the Emergency Room at the time, Dr. Henry Kurusz, M.D. This was also upheld by Chief Executive Officer, Robert Conroy, when he informed Physicians they would be "fired" if their admission rate was not up to a certain level.

17. Once a patient is admitted to a hospital for care of at least one overnight stay, they are called an "inpatient". According to an article by The New York Times;

> "In late 2008, for instance, **HCA** changed the billing codes it assigned to sick and injured patients who came into the emergency rooms. Almost overnight, the numbers of patients who **HCA** said needed more care, which would be paid for at significantly higher levels by Medicare, surged...To some, **HCA** successfully pushed the envelope in its interpretation of existing Medicare rules...In one instance, **HCA** executives said a private insurer, which it declined to name, questioned the new billing system, forcing it to return some of the money it had collected...Nearly overnight, **HCA's** patients appeared to be much, much sicker. By 2010, **HCA** had surpassed other hospitals, with 76 percent of its payments coming from the two most expensive classifications, versus 74 percent for other hospitals." (Creswell, Julie

and Abelson, Reed. "A Giant Hospital Chain Is Blazing a Profit Trail." *The New York Times* N.p.,14 Aug. 2012. Web. 7 July 2013.)

18. In approximately 2009, **Relator** was asked by the COO (who was also the Ethics and Compliance Officer) if **SPGH** was in compliance for the Medicare One Day Stays initiative. **Relator** expressed her continued concern regarding inappropriate admissions to the hospital, and requested an audit of thirty (30) medical records from third quarter 2009. **Relator** completed the audit which resulted in a high percentage of non-compliance with inpatient criteria. The Physician advisor (Dr. Robert Beamer) administered a second review, which corroborated Relator's complaints of admissions abuse and associated over utilization and over billing.

19. Relator, **MARNE SIMPSON**, took immediate steps with her employer to address the serious problems raised by the actions of **ST. PETERSBURG GENERAL HOSPITAL** in admitting Emergency Room patients who did not meet the InterQual requirements for admission to the hospital. Specifically in 2010, **Relator** spoke with **SPGH** Chief Financial Officer (CFO), Andrew Smith who ignored her plea for compliance with InterQual criteria. In March 2010, at the monthly denial committee meeting, **Relator** again expressed her serious concerns of non-compliance and retaliatory threats to Physicians to the Revenue Integrity Nurse, HIM Director, Patient Access Director, and CFO.

20. Based upon the false billing practices and false claims described above, Defendant, **ST. PETERSBURG GENERAL HOSPITAL**, obtained payment directly or indirectly from the United States Government for its services.

**COUNT I**
**FALSE CLAIMS ACT VIOLATION**

21. The allegations of the preceding paragraphs are realleged as if fully set forth herein.

22. Defendant, **HCA**, by and through its officers, agents and employees, knowingly presented or caused to be presented to an officer or employee of the United States Government, false or fraudulent claims for payment and approval.

23. Defendant, **HCA**, by and through its officers, agents and employees, knowingly made, used or caused to be made or used, false records or statements, to get false or fraudulent claims paid or approved.

24. Based upon the false claims described above, Defendant, **HCA,** directly or indirectly obtains payment from the United States Government for its services it provides to the healthcare industry.

25. Defendant, **HCA**, by and through its officers, agents and employees, have authorized the actions of its various officers, agents and employees to take actions set forth above.

26. The United States Government has sustained damages because of the acts of Defendants, **HCA**, as a result of the Defendants' violation of the False Claims Act, 31 U.S.C. § 3729.

27. The actions described above occurred during the time period in which **HCA**, was a contractor or subcontractor with the United States Government pursuant to various contracts, including, but not limited to, the time period which Relator, **MARNE SIMPSON**, was employed by the Defendant, **ST. PETERSBURG GENERAL HOSPITAL.**

28. As set forth in the preceding paragraphs, Defendant, **HCA**, has knowingly violated 31 U.S.C. § 3729 and has thereby damaged the United States Government by its actions in an amount to be determined at trial.

## COUNT II

## RETALIATION

29. The allegations in the preceding paragraphs are realleged as if fully set forth herein.

30. Relator, **MARNE SIMPSON**, was terminated by Defendant, **ST. PETERSBURG GENERAL HOSPITAL,** by and through its officers, agents and employees, because of the lawful

acts done by her in furtherance of an action under the False Claims Act, including her opposition to illegal practices and participation in the investigation of an action under the False Claims Act.

31. Defendant's actions set forth above is in violation of 31 U.S.C. § 3730(h) and damaged Relator in an amount to be determined at trial.

32. WHEREFORE, **Relator**, on behalf of herself and the United States Government, prays:

    (a) That this Court order the Defendants, **HCA**, cease and desist from violating § 31 U.S.C. 3729;

    (b) That **Relator** be awarded all relief necessary to make her whole, including, but not limited to, two times her back pay, interest on the back pay, and compensation for all special damages sustained, including attorneys' fees and costs.

    (c) That this Court enter judgment against the **Defendant** in an amount equal to three times the amount of damages the United States Government has sustained because of its action, plus a civil penalty of $5,000 to $10,000 for each action in violation of 31 U.S.C. § 3729, and the costs of this action, with interest, including the costs of the United States Government for its expenses related to this action;

    (d) That **Relator** be awarded all costs incurred, including reasonable attorneys' fees;

    (e) That in the event the United States Government continues to proceed with this action, **Relator** be awarded an amount for bringing this action in the amount of at least fifteen percent (15%) but not more than twenty-five percent (25%) of the proceeds of the action or settlement of the claim;

    (f) That in the event the United States Government does not proceed with this action, **Relator** be awarded an amount that the Court decides is reasonable

for collecting the civil penalty and damages, which shall be not less than twenty-five percent (25%) nor more than thirty percent (30%) of the proceeds of the action or settlement;

    (g)    That a trial by jury be held on all issues;

    (h)    That the United States Government and **Relator** receive any other relief, both at law and at equity, to which they may reasonably appear entitled.

## JURY DEMAND

33.    Relator, **MARNE SIMPSON**, hereby demands a trial by jury of all issues in this action.

Dated: July 12, 2013                              Respectfully submitted,

                                                      By: s/ David J. Linesch
**DAVID J. LINESCH, ESQ.**
Florida Bar Number 0376078
Attorney for Plaintiff/Relator
*THE LINESCH FIRM, P.A.*
700 Bee Pond Road
Palm Harbor, FL 34683
Telephone: (727) 786-0000
Fax: (727) 786-0974
E-mail: Laborlaw@Lineschfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

By: s/ David J. Linesch
**DAVID J. LINESCH, ESQ.**
Florida Bar Number 0376078
Attorney for Plaintiff/Relator
*THE LINESCH FIRM, P.A.*
700 Bee Pond Road
Palm Harbor, FL 34683
Telephone: (727) 786-0000
Fax: (727) 786-0974
E-mail: Laborlaw@Lineschfirm.com